John G. BAUMANN, Jane Baumann,
Plaintiffs,

v.

MALONEY CONCRETE COMPANY, a
corporation, Defendant.

Civ. A. No. 464–65.

United States District Court
District of Columbia.

Nov. 29, 1967.

Joseph D. Bulman, Washington, D. C.,
for plaintiffs.

Arthur V. Butler, Washington, D. C.,
for defendant.

## OPINION

HOLTZOFF, District Judge.

The plaintiff, John G. Baumann, was awarded damages by the jury, in an action for personal injuries, in the sum of $92,250, and his wife, Jane Baumann, for loss of his services and companionship, in the amount of $12,500. The defendant moves for a new trial on two grounds: first, that the Court erred in directing the jury to find for the plaintiffs and leaving only the amount of damages to be determined by the jury; and, second, that the verdicts are excessive. The Court will consider each of these two points separately.

The evidence showed the following facts. The plaintiff was an employee of the Potomac Sand and Gravel Company, which was engaged in the business of selling sand, gravel and concrete. The business was conducted in the following manner: customers' trucks would drive to the company's place of business and pass through one of several aisles, where they would stop and be loaded with the required merchandise. At the time in question the plaintiff was working on a scaffolding that had been temporarily erected over one of the aisles. He was making certain repairs while standing on that scaffolding. Numerous trucks passed through the aisle underneath the scaffolding and apparently had no difficulty in clearing it.

One of the defendant's trucks, after being loaded with the merchandise that the defendant was purchasing, started to drive through the aisle and struck the scaffolding. The evidence indicated that some protruding object from the truck hit the scaffolding. As a result of this collision the plaintiff was thrown to the ground and sustained the injuries involved in this case.

At the close of the entire case the plaintiff's counsel moved for a direction of a verdict in favor of the plaintiff. The Court granted the motion on the ground that when a moving vehicle strikes a stationary object which is not out of its proper place and which is visible, and no explanation is offered why the impact occurred a *prima facie* case of negligence is established. This was held by the Court of Appeals for this Circuit in Haw v. Liberty Mutual Insurance Co., 86 U.S.App.D.C. 86, 91, 180 F.2d 18, 23, where the pertinent principle of law was summarized as follows:

"It has been held consistently that when a moving vehicle strikes a stationary object which is not out of its proper place, a *prima facie* case of negligence is established."

This principle was followed by the Court of Appeals for the District of Columbia in Machanic v. Storey, 115 U.S.App.D.C. 87, 90, 317 F.2d 151.

■ It is argued by able counsel for the defendant that there are questions of contributory negligence and assumption of risk which should have been submitted to the jury. It is claimed that it was contributory negligence and also constituted assumption of risk to permit vehicles to pass under the scaffolding instead of closing off the aisle while the scaffolding was being used by persons working on it. It is contended that the plaintiff had sufficient authority to have directed a closing of the aisle. The Court is of the opinion that it cannot be said that the fact that the aisle was not shut off and closed was a proximate cause of the injury that the plaintiff has sustained. The proximate cause was the fact that the truck struck the scaffolding. It was the duty, of course, of the driver of the truck to have made certain that he could clear the scaffolding before he drove under it.

In view of these considerations the Court is of the opinion that its direction of a verdict for the plaintiffs was in accordance with law and the evidence. The objection is overruled.

■ We pass now to the size of the verdicts. The amount of the verdicts was high and liberal. The Court has given a great deal of thought to the size of the verdicts ever since the trial and especially subsequently to receiving the defendant's motion. It is necessary to analyze the components of the verdict. Taking first the verdict for the male plaintiff,—$92,250. Of that amount approximately $30,000 is special damages, slightly over $12,000 being for medical and hospital expenses and incidentals connected with them; and almost $18,000 is for loss of wages. This leaves the sum of about $62,000 for pain and suffering and permanent injuries.

Discussing these last two elements separately, the plaintiff's arms and hands were seriously injured. He was in the hospital for about six weeks, the first two weeks with his arms outstretched and in traction above his head. He was unable to move during that time. Steel pins were inserted through the bones of one hand and another steel pin through an elbow. A cast was applied. A pin was put through the bones of the other wrist as well. After being released from the hospital he was treated as an outpatient with therapy of various types. The accident happened on June 19, 1964. By February 1965, the fracture had not as yet healed. There was what physicians and surgeons call a non-union of the bones in one wrist. The plaintiff was again hospitalized and a bone graft was performed. Apparently it was not successful and an infection developed that required additional treatments. In November 1966 another attempt was made to achieve a bone graft. Thus the plaintiff was in and out of hospitals for almost

two and a half years after the accident. So much for pain and suffering.

The medical testimony, which is undisputed, is to the effect that the plaintiff sustained permanent injuries to his hands. One of the forearms has been shortened; both hands have a limitation of motion; there is very little functional use of the fingers and the hands cannot perform any useful functions. The plaintiff did not have sufficient education to enable him to fill what is known as a white collar job. His employment has been mechanical. He is unable to do any manual work or use any tools as a result of the injuries to his hands. He has to wear a brace on his right arm and has no use of the arm. He is unable to use ordinary kitchen and dining room utensils. He has to be helped in washing and dressing. His food has to be cut for him. In addition to that, he sustained a loss of earning power. He has been able to get a position as a watchman or guard, after some difficulty, at a salary of $2,100 a year less than he had been earning prior to the accident. He is unable to go out socially or appear in public places because of the embarrassment that he suffers due to the inability to use his hands normally.

It does not seem to the Court that an award of $60,000 for pain and suffering and for the permanent injuries is beyond reasonable bounds. The award does not shock the conscience, and it is not the result of passion and prejudice. Whether the Court would have awarded the same amount or not is immaterial. What is important is that it cannot be said that the award is not sustained by the evidence or not warranted under the facts of this case. The decision was a jury question which the jury reached within reasonable limits. For the Court to require a remittitur would be to encroach upon the function of the jury.

The Court wishes to add the following observation. The case was very ably tried on both sides. There were no appeals to sympathy, no eloquence or histrionics or excessive oratory employed by counsel. The evidence was presented and discussed in a calm, objective fashion on both sides.

The Court, therefore, sees no reason for interfering with the award of the jury insofar as the male plaintiff is concerned.

The award of $12,500 to the wife for loss of services and companionship does seem high, but this is an extreme case. The wife acted practically as a nurse from the moment the plaintiff returned from the hospital. He is unable to do any work around the house as he used to. The wife has to continue helping her husband, she has to cut his food, help him dress, and so on. In other words, she is married to a partial cripple. They cannot go out socially because of his condition. He shuns visitors. These effects are much more serious than are confronted in most cases of personal injuries.

In this connection the Court has made an attempt to review some verdicts that have been made or sustained for loss of a spouse's services. To be sure, the amount of a verdict is something that cannot be influenced by precedents. Nevertheless, it may be illuminating to see what has been done in other cases. The Court has found two similar cases under the Federal Tort Claims Act, tried in Federal courts, necessarily without a jury, the award being made by the judge alone. The Court felt that cases of this type were perhaps more weighty than jury awards.

In the case of Redding v. United States, D.C., 196 F.Supp. 871, decided by Judge John E. Miller of the Western District of Arkansas, an eminent judge of many years' experience, a wife sustained permanent injury to her kidneys and developed a condition of rheumatoid arthritis as a result of malpractice in a government hospital. She received a blood transfusion of a wrong type of blood. The Court awarded the sum of $10,000 as the husband's damages for loss of services. I might say that no medical expenses were included in that figure because the medical and hospital expenses were paid by the government.

In Kolesar v. United States, 198 F. Supp. 517, decided in the Southern District of Florida, again there was malpractice in a government hospital as a result of which a serviceman's wife sustained brain damage. There, too, the Court awarded $10,000 for loss of consortium.

In Price v. H. B. Green Transportation Line, 287 F.2d 363, the Court of Appeals for the Seventh Circuit sustained a jury award of $10,000 for the husband's loss of consortium.

This Court cannot reasonably say that an award of $12,500 is excessive or shocks the conscience in the light of the cases to which the Court has referred and in the light of the unusual facts of this case.

The Court has reached the conclusion that it should not interfere with either of the two verdicts.

The motions for a new trial or for a remittitur are denied.