Willie G. **BRIGHTHEART**, Appellant,

v.

Ted **McKAY** et al., Appellees.

No. 21813.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 2, 1968.

Decided April 9, 1969.

Petition for Rehearing Denied May 14, 1969.

---

Mr. Donald J. Caulfield, Brentwood, Md., with whom Mr. Bond L. Holford, Brentwood, Md., was on the brief, for appellees.

Before BAZELON, Chief Judge, WRIGHT and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

■ Appellant Brightheart was a passenger in a car driven by Melvin Smith, and suffered injuries when appellee McKay turned his car into their path. He brought an action in the District Court against both Smith and McKay. The jury absolved Smith but returned a verdict against McKay in the amount of $50,000, which was reduced to $30,000 on remittitur.

The defendants had filed cross-claims against one another, in addition to each denying his negligence. After plaintiff obtained his verdict, defendant McKay moved to have Smith held liable for one-half the judgment. Over plaintiff's objections, the trial court granted that motion. It held the issue of Smith's liability to McKay was concluded by the fact that while the action was pending in District Court Smith had sued McKay in General Sessions and Judge Barlow denied recovery on the ground that both parties were negligent and Smith was barred by his contributory negligence.

Defendant McKay then obtained an order reducing his liability to plaintiff from $30,000 to $15,000, because prior to trial appellant had settled his case against Smith for $7,000, and given Smith a release.

We think the judgment should be affirmed. The case is controlled by our holding in Martello v. Hawley, 112 U.S. App.D.C. 129, 300 F.2d 721 (1962). We there held, on substantially similar facts, that an injured plaintiff, with claims against two or more wrongdoers, could not recover more than a proportionate share of damages from a concurrent tortfeasor after he had settled his claim with one of the wrongdoers. We so held even though plaintiff had compromised his

Mr. M. Michael Cramer, Washington, D. C., with whom Mr. H. Thomas Sisk, Washington, D. C., was on the brief, for appellant.

claim for a sum that turned out to be less than one-half the verdict later rendered against the nonsettling tortfeasor.

Appellant seeks to distinguish *Martello* on the ground that there the jury gave judgment for one defendant against the other on a cross-claim for contribution. Here, says appellant, the jury exonerated Smith.

We think the jury's verdict as to Smith was a legal nullity. There was no pending legal contest between plaintiff and Smith; it had been settled. There was no pending legal contest between McKay and Smith; their liability to one another had been resolved in the General Sessions action, an action which applied, by extension, to the issue of contribution over liability to plaintiff.

Appellant complains that he is victimized, that he suffered $30,000 damage which he could have obtained if he sued McKay alone, and that he should not be worse off because he obtained $7,000 from Smith after making a correct forecast that the jury would not hold Smith liable to plaintiff.

There are nice calculations to be made in this kind of litigation and different ways to frame the question. But obviously plaintiff's right to $30,000 from McKay could only be maintained if he permitted McKay to seek contribution from Smith.[1] Yet plaintiff interjected himself into the situation when he let Smith buy his peace for $7,000. Although he may have had good reason for thinking this was good tactics because of the probability that a jury would not hold Smith liable, he took the risk that Smith would be held liable in contribution in an action by McKay,[2] and that his settlement with Smith would thus dispose of one half his claim. Plaintiff might have sought to minimize the risk by obtaining some agreement concerning Smith's litigating against McKay. But, as matters stand, he got $7,000 from Smith, and $15,000 from McKay, and that is the limit of his recovery.

■ Plaintiff is saying, in effect, that the money he got from Smith is really no reason why he shoud not get full damages from McKay. The counter-consideration is, simply, that he cannot equitably insist that he is entitled to full damages from McKay in addition to $7,000 from Smith.[3] He may have had an intelligent expectation that this result would materialize, but it cannot be insisted upon to the extent of preventing McKay from bringing suit against Smith for contribution. And McKay's entitlement to contribution is established for present purposes, even though his litigation with Smith was begun by Smith (in General Sessions) and was not brought as an action for contribution.

■■ We think the doctrine of estoppel applies even though the precise ques-

1. Indeed, this separate claim for contribution could have been brought in an independent action to which plaintiff was not a party. See Keleket X-ray Corp. v. United States, 107 U.S.App.D.C. 138, 275 F.2d 167 (1960) ; Knell v. Feltman, 85 U.S.App.D.C. 22, 174 F.2d 662 (1949) ; Henry Fuel Co. v. Whitebread, 99 U.S. App.D.C. 9, 236 F.2d 742 (1956) ; see generally, W. Prosser, The Law of Torts § 47, at 273 (3d ed. 1964).

2. We are of course not concerned with a situation where the two defendants have arranged some contrived or collusive litigation.

3. Compare McKenna v. Austin, 77 U.S. App.D.C. 228, 233, 134 F.2d 659, 664, 148 A.L.R. 1253 (1943) (Rutledge, J.), pointing out that the doctrine making each tortfeasor liable for the whole damage "does not mean the injured person may have more than full satisfaction, except as punitive damages. He has no right to make profit from his harm because several share in causing it."

*McKenna*, however, assumed that there were joint tortfeasors and a right of contribution. A plaintiff can establish a right to full damages from a wrongdoer and capability of a settlement from one not properly liable in tort for the same reason that he may obtain settlement from one not properly liable in tort where no other defendant or prospective defendant is involved. A person pays money in settlement to avoid the possibility that a jury might find him liable and require a larger payment.

tion for determination in the second action, Smith's negligence vis à vis Brightheart, was not, technically speaking, litigated. The factual and legal issues in the two actions are, however, so interrelated that the result in General Sessions is properly dispositive of the subsequent action for contribution. We visualize no way of concluding, consistently, that Smith was so negligent as to bar his own recovery against McKay, without concluding that this made him liable to his passenger, Brightheart.[4]

Affirmed.

4. The purist may note that the applicable legal doctrine is estoppel by judgment (collateral estoppel) rather than res judicata. Nothing turns on that.

The critical question in the application of collateral estoppel is whether the parties have had a full opportunity to litigate the issue on which they are estopped. While it may be that a litigant will not, for reasons of time and money, seriously litigate an action for a small sum in a lower court, we do not face that situation. Here, estoppel is invoked as against the person who initiated the action in General Sessions as plaintiff. There is every reason to believe he exerted his full energies to obtain recovery, and sought to avoid any determination of negligence on his part. See Currie, Mutuality of Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281, 309 (1957); compare Collateral Estoppel, Mutuality and Joinder of Parties, 68 Colum.L.Rev. 1457, 1468–69 (1968); see generally, Note, Developments in the Law—Res Judicata, 65 Harv.L.Rev. 820 (1952).

We are not here troubled by the possibility that the party may not fairly invoke collateral estoppel because he had only a lesser burden of proof in the prior litigation. Although this may be a complication for the few jurisdictions that use a different rule, the District of Columbia follows the general doctrine whereby a defendant (McKay) has the burden of proving the negligence of plaintiff (Smith) in order to establish his defense in an action for negligence, such as that brought in General Sessions. See Washington & Georgetown Railroad Co. v. Gladmon, 15 Wall. (82 U.S.) 401, 406, 21 L.Ed. 114 (1872); Gutshall v. Wood, 74 App.D.C. 379, 123 F.2d 174 (1941); W. Prosser, supra note 1, § 64, at 426; Restatement (Second) Torts § 477.