**PHOENIX ASSURANCE COMPANY OF NEW YORK, Plaintiff,**

**v.**

**POTOMAC SAND AND GRAVEL COMPANY, Defendant.**

**Civ. A. No. 2958-68.**

United States District Court, District of Columbia. Civil Division. May 17, 1972.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Phoenix Assurance Company, plaintiff herein, is the insurer of Maloney Concrete Company, defendant in Baumann v. Maloney Concrete Company, 278 F. Supp. 463 (D.D.C.1967) and, as such, through its attorneys defended that litigation which culminated in a judgment in favor of John G. Baumann in the sum of $92,250 and in favor of his wife, Jane, $12,250 against Maloney Concrete Company. Phoenix compromised the aforesaid sums by the payment of $90,000 on February 1, 1968 and thereafter the appeal taken from the judgments in favor of the plaintiffs was dismissed.

On the date of the accident in question there was in force an oral agreement between Maloney and defendant Potomac for the purchase and sale of concrete and cement. As a standard procedure, truck operators of Maloney would come into the Potomac yard with

tickets for the purchase of products given them by their dispatchers. The trucks then would proceed to the aisles where they would receive the products from overhead batch and cement hoppers. Maloney was billed by Potomac monthly according to the amount of its purchases.

On June 19, 1964, John G. Baumann, plaintiff in Baumann v. Maloney Concrete Company, 278 F.Supp. 463 (D.D. C.1967), was standing on a temporary platform above an aisle (No. 1) on his employer's premises, which aisle was used to load concrete and cement trucks. Mr. Baumann was fixing a batch hopper on a scaffolding he had erected with the assistance of other fellow employees. The scaffolding in question consisted of a 2″ x 10″ x 16″ board which was approximately 10′ above the floor of the aisle. The aisle ran north and south. The scaffolding on the west end was supported by one 4″ x 4″ oak frame approximately 10′ high and on the east end by a crate supported by a 12″ by 12″ oak block which in turn was supported by the loading platform. The component parts were fastened together. The scaffolding such as described above had been in use for at least 35 years at the Potomac plant and it was designed specifically for fixing batch hoppers.

One Paul R. Pope, a former employee of Maloney Concrete Company, was operating one of the Maloney trucks and came into aisle No. 1 of Potomac's plant on the date aforesaid to obtain a load of concrete. Mr. Pope saw two men, one of whom was John G. Baumann, standing on the scaffolding and working on the batch hopper directly in front of him. The truck ahead of Mr. Pope's truck had no difficulty in passing under the scaffolding and several trucks had gone through aisle No. 1 that day.

Before continuing north in the aisle Mr. Pope had removed the circular drum lid or cover over the hopper part of the cement truck and placed it on his truck in a nearly upright position wedged between the mixer drum and the guardrail, and protruding above the top of the truck. Without making any determination as to whether his truck, together with the cover lid in the position that he had placed it in, could pass safely under the scaffolding, Mr. Pope drove off down the aisle in a manner described by the witness Joseph Short as "hotrodding it" and the upright lid on the truck struck the scaffolding dislodging Mr. Baumann and causing him serious injuries.

During the course of the *Baumann* trial as set forth in the pretrial order and later in the opinion of the court, among other defenses, it was contended that the plaintiff John G. Baumann was guilty of contributory negligence for failing to erect a safe scaffolding and/or to close off the aisle while he was working on the batch hopper. However, at the conclusion of the evidence, the court, through Judge Holtzoff, directed a verdict in favor of the plaintiff stating its reasons therefor:

> "It is argued by able counsel for the defendant that there are questions of contributory negligence and assumption of risk which should have been submitted to the jury. It is claimed that it was contributory negligence and also constituted assumption of risk to permit vehicles to pass under the scaffolding instead of closing off the aisle while the scaffolding was being used by persons working on it. It is contended that the plaintiff had sufficient authority to have directed a closing of the aisle. The Court is of the opinion that it cannot be said that the fact that the aisle was not shut off and closed was a proximate cause of the injury that the plaintiff has sustained. The proximate cause was the fact that the truck struck the scaffolding. It was the duty, of course, of the driver of the truck to have made certain that he could clear the scaffolding before he drove under it." Baumann v. Maloney Concrete Company, 278 F.Supp. 463, 464 (D.D. C.1967).

At trial of the case at bar, in support of its allegation of negligence, plaintiff

presented two qualified expert safety witnesses; one in charge of enforcement of the District of Columbia safety regulations; the other a recognized expert in the field of industrial safety. The substance of their testimony was that the structure used as a scaffold was built by Potomac in violation of the "Safety Standards, Rules and Regulations Construction" of the Minimum Wage and Industrial Safety Board, made applicable to structures used in making repairs by Title 36, Section 431 et seq. Those safety regulations require that a scaffold be secured at both ends;[1] that a scaffold 10' high or more have a railing;[2] that the scaffold flooring not exceed the statutory length;[3] that the scaffold flooring not be too narrow;[4] and that the scaffold flooring be secured;[5] and that this scaffold failed to comply with each of such requirements. Testimony further revealed that Potomac's failure to close aisle No. 1 was in violation of Title 36, Section 438 of the District of Columbia Code in force and effect at the time of this accident.

Plaintiff is proceeding under two separate theories. First, plaintiff alleges that under tort principles the negligence of Maloney, through its operator Pope was secondary or passive, and that of the defendant Potomac active and primary, thereby sustaining an action of implied indemnity. Plaintiff's second contention is based on the law of contract and is couched in terms of implied warranty arising out of the sale of goods. Plaintiff asserts that such warranty embraces a duty to keep the premises in a reasonably safe condition; that the defendant failed in this respect, and as a result, Phoenix was damaged to the extent of the sums paid to the Baumanns in the earlier litigation.

Treating this action as one in tort, this court finds that plaintiff's case is barred on the theory of collateral estoppel. *See* Brightheart v. McKoy, 136 U.S.App.D.C. 400, 420 F.2d 242, n. 4 (1969). This bar is supported by the fact that plaintiff, although not a named party in the *Baumann* case, as liability insurer of defendant Maloney in *Baumann* it had an interest sufficiently close to the matter in litigation such that the policies underlying the doctrine of judicial finality require plaintiff to be bound by the resulting judgment to the same extent as though he were a party to the action.

"The persons for whose benefit, to the knowledge of the court and of all the parties to the record, litigation is being conducted cannot, in a legal sense, be said to be strangers to the cause. The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record." Souffront v. La Compagnie des Sucreries, 217 U.S. 475, 486–487, 30 S.Ct. 608, 612, 54 L. Ed. 846 (1910).

Regarding the requirement of identity of issue, Judge Holtzoff's finding in *Baumann* that "the proximate cause [of the accident] was the fact that the truck struck the scaffolding" is fatal to plaintiff's action over for indemnity because under tort law in the District of Columbia that finding of active negligence

---

1. District of Columbia Code, Title 36, Section 438 et seq. which makes "Safety Standards, Rules and Regulations Construction"; Minimum Wage and Industrial Safety Board, applicable to the scaffold in question, (hereinafter referred to as Safety Regulations); 11–21008, 11–21010 and 11–21056(c) (3) (B).

2. Safety Regulations; 11–21035(1)

3. Safety Regulations; 11–21056(c) (1)

4. Safety Regulations; 11–21056(c) (5)

5. Safety Regulations; 11–21056(c) (7)

bars recovery for indemnity even against a joint tort feasor. Nordstrom v. District of Columbia, 213 F.Supp. 315, 319 (D.D.C.1963), rev'd on other grounds, 117 U.S.App.D.C. 165, 327 F.2d 863 (1963).

Alternatively, plaintiff characterizes its claim for indemnity as one which rests on *contract*. It alleges that the contractual relationship between Potomac and Maloney to provide sand, gravel and other products, including access to Potomac's premises for the purpose of receiving the products, embraced Potomac's implied warranty of fitness that:

1. It would provide Maloney's agents, servants, and employees on Potomac's premises as business invitees a safe place to receive such products;

2. It would warn Maloney, its agents, servants, and employees of dangers to be encountered;

3. It would inspect its own premises for defects which might result in injury or loss to business invitees;

4. It would furnish its own employees with a safe place to work; and

5. It would operate a business establishment without violation of the D. C. Laws and Regulations.

■■ However, this court finds that the sales contract relationship between Potomac and Maloney did not include an implied warranty of fitness as to Potomac's premises. Under the law of sales one who manufactures or sells a commodity impliedly warrants that the commodity will be fit for its intended purpose, but this warranty does not extend to include a guaranty that the seller's *premises* are fit for receiving the commodity because *tort* law principles adequately provide for those safeguards under the duties which a landowner owes to business invitees, such as the duty to warn against dangerous conditions on the premises.

■■ Similarly, the seller's duty to warn of dangers in the article cannot be extended to include a duty to warn of dangers involved in the process of purchasing the article. As to Potomac's obligation to furnish its own employees with a safe place to work, it is difficult to perceive how this obligation which runs solely between Potomac and its employees creates, increases or in any way affects Potomac's sales relationship with Maloney.

■ Closely allied to the sales implied warranty of fitness is the implied warranty of workmanlike services enunciated in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The essence of that implied warranty is the service contract and the concomitant obligation to perform that service contract in a safe manner. However, in the eyes of the court, the *Ryan* implied warranty of performance does not extend to a sales contract as found in the present case.

■ Therefore, it is the court's view that plaintiff cannot bring this action as described in contract. However, even assuming *arguendo*, that plaintiff could bring this action under contract principles, this case would still be barred by the collateral estoppel doctrine because the material facts upon which plaintiff's allegations of contractual breach rest were adversely decided against plaintiff's insured through Judge Holtzoff's refusal to credit Maloney's defense of contributory negligence. Baumann, *supra*, 278 F.Supp. at 464. *See Brightheart, supra,* 420 F.2d at 244–245.

Accordingly, judgment be, and it hereby is, entered for the defendant.